```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
UNITED STATES OF AMERICA,                   :    CASE NO. 16-CR-92
                                            :
        Plaintiff,                          :
                                            :
v.                                          :    OPINION & ORDER
                                            :    [Resolving Doc. 32]
ANDREW DAVISON,                             :
                                            :
        Defendant.                          :
                                            :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Davison moves to suppress evidence obtained as a result of a search warrant executed on a residence in Elyria, Ohio. Davison argues that the police intentionally misled the judge who issued the search warrant, and that the affidavit failed to establish a permissible inference that the residence was Davison's.[1] Additionally, Davison says his statements at the residence and the police station should also be excluded because they were obtained through questioning after he asserted his right to counsel.[2] The Government opposes.[3]

On June 29, 2016, this Court received evidence and heard argument in Defendant's motion to suppress and his motion for a *Franks* hearing.[4] For the following reasons, the Court **DENIES** Davison's motion to suppress.[5]

---

[1] Doc. 32 at 5-9.
[2] *Id.* at 4-5.
[3] Doc. 42.
[4] Doc. 32; Doc. 34.
[5] This opinion and order supplements the Court's bench ruling made at that time. *See United States v. Reid*, 357 F.3d 574, 580 (6th Cir. 2004) ("In both civil and criminal cases, a trial court is empowered to revisit any of its previous non-final rulings . . . .").

Case No. 16-cr-92
Gwin, J.

## I. Background

The Elyria Police Department received information from a Confidential Informant that Defendant Davison was distributing narcotics in Lorain County, Ohio.[6] The Confidential Informant had provided useful information in past investigations.

The Elyria Police Department arranged for the Confidential Informant to conduct controlled purchases of narcotics from Davison. The Confidential Informant conducted six purchases with Davison from October 9, 2015 through December 7, 2015.[7] During each of the controlled purchases, the Elyria Police Department used the standard protocol for controlled purchases of narcotics, such as photocopied buy money, search of the Confidential Informant before the buy, surveillance of the Confidential Informant, field test of narcotics, and audio and video recording of the transactions.[8] The narcotics purchased from Davison positively field tested as cocaine.[9]

Based on the Elyria Police's surveillance of the controlled buys, Elyria Police Department Detective Constantino wrote an affidavit in support of a warrant to search the house at 197 Warden Avenue, three cars Davison had been seen with, and Davison's place of employment, Gus's Auto, at 401 Adams Street, Elyria, Ohio.[10] Lorain County Judge John Miraldi authorized the search warrant to look for drugs and related property.[11]

---

[6] Doc. 42 at 1.
[7] *See* Pl.'s Exs. 1C; 1D; 1E; 2C; 2D; 3C; 3D; 3E; 4A; 4B-1; 4B-2; 4B-3; 4C; 4D; 4F; 4G; 5C; 6A; 6B; 6D; 6E; 9.
[8] Doc. 42 at 1-2.
[9] *Id.* at 3-4. The narcotics were later sent to Lorain County Crime Lab and received a positive result for the presence of cocaine. *Id.* at 3, n.2.
[10] *Id.* at 2.
[11] *Id.* at 4; Doc. 32-1.

Case No. 16-cr-92
Gwin, J.

On December 9, 2015, Elyria Police Department officers executed the search warrants.[12] Captain Costantino, Detective Welsh, Detective Constantino, Detective Groves, and Detective Straub executed the search of the residence.[13] After knocking and announcing without answer, members of the Elyria Police Department entered the house and found Davison and another woman in the bedroom, both in sleeping attire.[14]

An Elyria police officer asked Davison whether there were any weapons in the residence that could harm officers. Davison stated that there was a gun under the bed[15] and a shotgun in the closet.[16] Detective Constantino read Davison his *Miranda* rights. It is disputed whether Davison asserted his right to counsel at that time.[17] Nevertheless, Davison was not interrogated at the residence.[18]

The search warrant uncovered a pistol with a holster, a shotgun, ammunition, plastic baggies, multiple scales, a duffle bag containing a pyrex dish with drug residue, marijuana, cocaine, counterfeit drugs, as well as personal items of Davison's such as mail addressed to Davison at 197 Warden Avenue, multiple vehicle registrations, photographs of Davison with others, an Ohio Department of Rehabilitation offender identification card, an address book, clothing and shoes, and four cellular phones.[19]

---

[12] Doc. 42 at 5.
[13] *Id.*
[14] *Id.*
[15] The gun was a pistol that the Government argues would have been discovered regardless of Davison's statement. *Id.*
[16] The Government notes that the shotgun was in plain view because the closet door was open. *Id.*
[17] Doc. 32 at 4; Doc. 42 at 5.
[18] Doc. 42 at 5-6.
[19] *Id.* at 6-7.

-3-

Case No. 16-cr-92
Gwin, J.

Officers transported Davison to Elyria Police Department. Detective Constantino interviewed Davison on tape.[20] Detective Constantino re-read Davison his *Miranda* rights. Davison did not initially invoke his right to remain silent or his right to counsel.

During the interview, Davison admitted that he purchased the firearms. Shortly thereafter, Davison asked whether their conversation was being recorded. When Detective Constantino confirmed that it was, Davison stated, "I would like to have a lawyer present."[21] Detective Constantino then immediately stopped the interview.

First, Davison moves this Court to suppress all evidence seized from the 197 Warden Avenue residence.[22] Second, Davison asks this Court to find that the police intentionally misled the judge who issued the search warrant.[23] Finally, Davison moves this Court to suppress all statements because he says that he asserted his right to counsel at the house.[24]

For the reasons below, this Court **DENIES** Davison's motion to suppress and **DENIES** Davison's motion for a *Franks* hearing.

## II. Legal Standards

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[25]

---

[20] Pl. Ex. 8.
[21] Doc. 42 at 6.
[22] Doc. 32 at 5-9.
[23] *Id.* at 8-9.
[24] *Id.* at 4-5.
[25] U.S. Const. amend. IV.

Case No. 16-cr-92
Gwin, J.

### A. Seized Items

Probable cause for a search warrant exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[26] The reviewing judicial magistrate "is simply to make a practical, common-sense decision" whether all the facts and circumstances set forth in the supporting affidavit warrant "a reasonably prudent person" to believe that a crime has occurred and the place to be searched contained evidence thereof.[27] The magistrate reads the affidavit "not hypertechnically, but in a common sense fashion."[28] Where a magistrate judge has a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, his decision will stand unless a reviewing court finds that he "arbitrarily exercised" his powers of determination.[29] The circumstances detailed in the affidavit should demonstrate a "nexus between the place to be searched and the evidence sought."[30]

### i. Franks *Analysis*

If a defendant believes that a magistrate judge issued a warrant based on deficient or misleading information, he can seek a *Franks* hearing to exclude evidence obtained during the search.[31] A defendant desiring a *Franks* hearing must make a substantial preliminary showing that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is

---

[26] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[27] *Id.*
[28] *United States v. Ware*, 338 F.3d 476, 482 (6th Cir. 2003).
[29] *Gates*, 462 U.S. at 238-39; *United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993).
[30] *United States v. Adams*, No. 15-1175 at *7 (6th Cir. Jul. 5, 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).
[31] *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Case No. 16-cr-92
Gwin, J.

necessary to the finding of probable cause."[32] The defendant bears a heavy burden. "He must point to specific false statements" and "provide supporting affidavits or explain their absence."[33]

### ii. Exclusionary Rule and Good Faith Exception

Generally, courts must exclude evidence obtained in violation of the Fourth Amendment.[34] However, if an officer relies in good faith on a search warrant that is "subsequently held to be defective," the evidence obtained is still admissible.[35] "'[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"[36]

### B. Statements

The Fifth Amendment prohibits authorities from compelling any person "in any criminal case to be a witness against himself."[37] Consistent with the Fifth Amendment's privilege against self-incrimination, a suspect may not be subject to a custodial interrogation until being advised

---

[32] *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) (internal quotations omitted); *see Franks v. Delaware*, 438 U.S. 154, 155 (1978).
[33] *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).
[34] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963); *United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008).
[35] *United States v. Leon*, 468 U.S. 897, 905 (1984); *see Davis v. United States*, 564 U.S. 229, 239 (2011) (citing *United States v. Leon*, 468 U.S. 897 (1984)); *see also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (finding that the good faith exception applied because sufficient nexus existed between residence and illegal activity for police to reasonably believe a warrant valid); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (finding that a search pursuant to a warrant is upheld where the affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).
[36] *United States v. Leon*, 468 U.S. at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982)).
[37] U.S. Const. amend. V.

Case No. 16-cr-92
Gwin, J.

of his *Miranda* rights, including his right to remain silent and the right to counsel.[38] However, the right to counsel under *Miranda* must be invoked "unambiguously and unequivocally."[39]

Once so invoked, the police must immediately cease all questioning until counsel has been made available to the suspect.[40]

### i. Public Safety Exception

An exception to the Fifth Amendment privilege exists "when officers ask 'questions necessary to secure their own safety or the safety of the public' as opposed to 'questions designed solely to elicit testimonial evidence from a suspect.'"[41] For example, a law enforcement officer may inquire into whether any weapons are present under this exception.[42] "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it."[43]

### ii. Voluntariness

Under the Fifth Amendment, a suspect's confession must be voluntary. A confession obtained through "coercive police activity" is *involuntary*.[44] "An admission is deemed to be

---

[38] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).
[39] *Davis v. United States*, 512 U.S. 452, 459 (1994) ("[T]he suspect must unambiguously request counsel."); *McKinney v. Hoffner*, __ F.3d __, 2016 WL 3902645, at *4 (6th Cir. July 19, 2016) (*Miranda* and *Edwards* "require police officers to cease questioning a suspect who unequivocally invokes his right to counsel."); *see also Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).
[40] *Miranda*, 384 U.S. at 473-74.
[41] *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (quoting *New York v. Quarles*, 467 U.S. 649, 659 (1984)).
[42] *See United States v. Reese*, 509 F. App'x 494, 502 (6th Cir. 2012) (holding that the defendant's statement regarding a shotgun in the house should not be excluded under the public safety exception); *United States v. Williams*, 272 F. App'x 473, 477 (6th Cir. 2008) (holding that the defendant's statement regarding a gun in the house should not be excluded under the public safety exception).
[43] *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007).
[44] *United States v. Hunter*, 332 F. App'x 285, 288-89 (6th Cir. 2009) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

-7-

Case No. 16-cr-92
Gwin, J.

coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist."[45]

The Court examines "the totality of the circumstances" in determining voluntariness.[46] For example, in *United States v. Hunter*, an officer threatened to file federal charges against the defendant's girlfriend if he did not admit to purchasing and firing a gun.[47] The Sixth Circuit found that the district court did not err in finding that the defendant's subsequent confession was voluntary.[48] The officer may have believed in good faith that the girlfriend could have been charged. As a result, the coercion was not so great as to overbear the defendant's will, and the threat did not motivate the confession.[49]

### III. Analysis

*A. Suppression of Physical Evidence*

Davison argues that all physical evidence seized at the 197 Warden Avenue residence should be suppressed because the affidavit failed to establish a permissible inference that Davison resided at the address and that he stored drugs there.[50] Davison alleges that the only evidence linking him to the residence came from the uncorroborated statement of the Confidential Informant that he saw Davison go to, or come from, the residence four times over a two month period.[51]

Davison is incorrect. Davison misapprehends the showing required for a search warrant. The affidavit does not need to establish an inference that Davison *resided* in the house. Instead,

---

[45] *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994).
[46] *United States v. Finch,* 998 F.2d 349, 356 (6th Cir. 1993).
[47] *Hunter,* 332 F. App'x at 289-90.
[48] *Id.*
[49] *Id.* at 289.
[50] Doc. 32 at 5.
[51] *Id.* at 6.

-8-

Case No. 16-cr-92
Gwin, J.

the affidavit only needs to show a "nexus" between the place to be searched and the evidence sought.[52]

A common-sense reading of the affidavit leads to the conclusion that there is a nexus between the residence and the evidence of "any illegal narcotics and drug paraphernalia."[53] During two of the controlled buys, Davison went to 197 Warden Avenue to complete the transaction.[54] Only after going inside the house did Davison have and sell the drugs that then field-tested positive for cocaine.[55] A common-sense reading reasonably leads to the conclusion that the drugs were stored at the house.

Beyond this initial fact, there is ample additional evidence to link the places searched and the evidence sought. Davison's actions provided this nexus. The affidavit covered the dates for six controlled purchases from Davison, the cars Davison was seen driving, the amount of money for each purchase, the locations of the purchases, and the field test of the purchased substance. While this evidence may have relied on the inference that Davison resided at the house on 197 Warden Avenue some of the time, there is no legal necessity in making that finding.[56] Indeed, if Davison succeeds on his argument that he did not reside at 197 Warden Avenue, all he

---

[52] *United States v. Adams*, No. 15-1175 at *7 (6th Cir. Jul. 5, 2016); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

[53] Doc. 32-1 at 1. Other evidence sought included "any records with any indicia of hidden wealth and/or fruits of illegal income; any U.S. currency; including, but not limited to any pre-recorded buy money; any weapons; any contraband; any illegal narcotics; any drug paraphernalia." As described above, there was ample evidence to create the nexus between the residence and this more exhaustive list. As Defendant Davison seems to particularly object to the search for drugs, Doc. 32 at 5-6, the Court focuses on that element.

[54] Doc. 32-1 at ¶ 10, 12.

[55] At the hearing, Defendant objected to the Court not viewing the video of all of the controlled buys in the courtroom. The Government then submitted the full videos as evidence. The Court has reviewed each video, and finds them to be consistent with the still images the Government offered, as well as the affidavit Detective Constantino submitted.

[56] Defendant's reliance on *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) is unpersuasive. In *Frazier*, law enforcement had evidence of drug activity in the defendant's old home, but executed a search warrant on his new home without any evidence of illegal activity there. In contrast, here the house at 197 Warden Avenue was used during two controlled buys.

Case No. 16-cr-92
Gwin, J.

accomplishes is raising the specter that he does not have standing to challenge the search warrant at all.

The magistrate judge had a "substantial basis" for concluding that a search would uncover evidence of wrongdoing; there is no evidence that the magistrate judge "arbitrarily exercised" his power.[57] The magistrate judge properly issued the search warrant.

Even if the warrant were facially deficient—which the Court finds that it is not—the officers acted in good faith in executing the warrant.[58]

B. *Motion for* Franks *Hearing*

Davison's second argument is that he has made a substantial preliminary showing for a *Franks* hearing. He has not.

Davison's own affidavit does not specifically identify any part of Detective Constantino's affidavit that is false or misleading. The Court does not find credible the other affidavits Davison submitted.[59] The Confidential Informant admitted under oath that he was coerced into writing the affidavit in which he claimed he never bought drugs from Davison.[60] LeShawn Maxwell and Brittnay Davis both aver that Davison lived at another location. However, as discussed above, determining Davison's "residence" was not necessary to the finding of probable cause. Davison's evidence does not undermine the common sense reading that the sale of drugs was connected to the house at 197 Warden Avenue.

---

[57] *Gates*, 462 U.S. at 238-39; *United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993).

[58] *Leon*, 468 U.S. at 897; *see also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (finding that the good faith exception applied because sufficient nexus existed between residence and illegal activity for police to reasonably believe a warrant valid); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (finding that a search pursuant to a warrant is upheld where the affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).

[59] *See* Doc. 34 Ex. H, I, J, K.

[60] Transcript at 86:14-24.

-10-

Case No. 16-cr-92
Gwin, J.

Charles Smith's statement that "the marijuana found at 197 Warden Avenue belongs to me" also does not throw the search warrant into question. The search warrant was not obtained based on evidence of marijuana.

Davison's other exhibits — the lease agreement, car registrations, and sales receipts from the days of the controlled buys — may provide evidence that Davison used other addresses at times, and that he did other activity on the day of the controlled buys. But the exhibits do not undermine Detective Constantino's affidavit.

Davison contends that he will present evidence that the affidavit contained material omissions and other false statements if the Court grants a *Franks* hearing.[61] At the suppression hearing, defense counsel articulated the *Franks* contention as: "the informant simply did not get drugs from Mr. Davison."[62] The Court finds that the videos and photographs of the controlled purchases belie Davison's position.[63] They show that Davison was involved with the transactions with the informant.

Therefore, Davison has not made the "substantial preliminary showing" required to warrant a *Franks* hearing.

For the reasons above, the Court **DENIES** Davison's motion for a *Franks* hearing.

*C. Suppression of Defendant Davison's Statements*

Davison argues that his statements both at the 197 Warden Avenue residence and at the police station must be suppressed. Davison's arguments lose.

---

[61] Doc. 32 at 8.
[62] Transcript at 162:9-10.
[63] Pl.'s Exs. 1C; 1D; 1E; 2C; 2D; 3C; 3D; 3E; 4A; 4B-1; 4B-2; 4B-3; 4C; 4D; 4F; 4G; 5C; 6A; 6B; 6D; 6E; 9.

Case No. 16-cr-92
Gwin, J.

Davison first contends that, while at the residence, the statements were gathered through questioning after he asserted his right to counsel.[64] The Government responds that Davison did not assert his *Miranda* rights at the house, and that, regardless, the officers' questions about the presence of a gun falls within the public safety exception.[65]

This Court agrees with the Government and finds their facts credible. Upon entering the bedroom that Davison occupied, officers informed Davison that they were executing a search warrant and asked if there were any weapons in the residence.[66] Davison replied that there was a loaded shotgun in the closet and a gun under the bed.[67] The statement is admissible under the public safety exception.[68]

Davison also contends that his statements at the police station were improperly obtained after Davison had requested counsel.[69]

In response, the Government argues that Davison did not demonstrate that he unambiguously and unequivocally asserted his right to counsel at the house.[70] This Court agrees. The officers' re-initiating questioning is only a violation of the Fifth Amendment if Davison affirmatively invoked his right to counsel previously. Davison has not presented credible evidence that he unambiguously and unequivocally asserted his right to counsel at the residence.

In the taped recording of the interview at the police station,[71] Detective Constantino read Davison his *Miranda* rights. Davison did not invoke his rights at that time. Approximately

---

[64] Doc. 32 at 4-5.
[65] 467 U.S. 649 (1984); Doc. 42 at 14, 15. The Government does not assert that any other statements were made at the residence in its motions or at the June 29, 2016 hearing.
[66] Doc. 42 at 14.
[67] *Id.*
[68] *United States v. Williams*, 272 F. App'x 473, 477 (6th Cir. 2008) (holding that the defendant's statement regarding a gun in the house should not be excluded under the public safety exception).
[69] *Id.* The voluntariness issue was not addressed in either Plaintiff's or Defendant's briefing, but was introduced at the suppression hearing on June 29, 2016. *See* Transcript at 51-52, 165.
[70] Doc. 42 at 14; *see Davis*, 512 U.S. at 459.
[71] Pl.'s Ex. 8.

Case No. 16-cr-92
Gwin, J.

fourteen minutes into the interview, Davison asked if the conversation was being recorded. When Detective Constantino affirmed that it was, Davison stated, "I would like to have a lawyer present," and the interview immediately concluded. As Davison was not questioned after he asserted his right to counsel, there was no Fifth Amendment violation.

Davison's argument that the statements should be suppressed as fruit of the poisonous tree also loses. As discussed above, the search was based on a valid search warrant, so the statements are not tainted.

Finally, Davison's voluntariness argument introduced at the June 29, 2016 suppression hearing loses. Davison argues that his statements at the police station—where he admitted purchasing the guns—were involuntary because the officers threatened to charge him federally.[72] As in *Hunter*,[73] the officer believed in good faith that he could bring federal charges against Davison. Additionally, there is no evidence that the threat overbore Davison's will. Accordingly, Davison's statements were voluntary.

For the reasons above, the Court **DENIES** Davison's motion to suppress.

### IV. Conclusion

In accordance with the reasons above, this Court **DENIES** Davison's motion.

IT IS SO ORDERED.

Dated: July 25, 2016                                  *s/        James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE

---

[72] Transcript at 165:8-13.
[73] *United States v. Hunter*, 332 F. App'x 285 (6th Cir. 2009).

-13-